

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

February 27, 2023

**BY ECF**

The Honorable Andrew L. Carter, Jr.
United States District Judge
Southern District of New York
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

  Re: United States v. Ervin Makishti, 20 Cr. 660 (ALC)

Dear Judge Carter:

  The Government respectfully submits this letter in advance of sentencing of defendant Ervin Makishti, a/k/a "Vinny," currently scheduled for March 2, 2023 at 3:30 p.m., and in response to defendant's sentencing memorandum dated February 20, 2023.

  Ervin Makishti has had stable employment since 2011 as a superintendent at a building on the Upper East Side, including an apartment in which he and his family live rent free. Nonetheless, he decided to supplement that income, through leading a conspiracy whereby he ran a sports book and operated an illegal gambling parlor, earning hundreds of thousands of dollars from his unlawful conduct. Illegal businesses like Makishti's need protection and assistance, and Makishti found that in Abduraman Iseni, a/k/a "Diamond," a recidivist and dangerous felon.

  After the Court imposed a non-incarceratory sentence for Miralem Ljuljanovic, the Government agreed that a similarly situated co-defendant, Jetmir Sulaj, should not receive a period of incarceration. But contrary to Makishti's assertion, he is not similarly situated to those defendants. Unlike those defendants, Makishti had a well-paying job outside of his illegal gambling; and his gambling operation earned far more money, for longer, than either Ljuljanovic or Sulaj's did. And Makishti was closer to Iseni, and relied more heavily on his ties to the criminal underworld. These differences mean that Makishti merits an incarceratory sentence, albeit one below the applicable Sentencing Guidelines of 12 to 18 months', as well as a $5,500 fine, and the applicable forfeiture of $1,069,017.

**A. Instant Offense Conduct**

  Beginning in or about 2015, Makishti owned and operated an illegal gambling business called Sports Café in Brooklyn. Presentence Investigation Report ("PSR") ¶ 32. Sports Café had numerous employees. PSR ¶ 39. Sports Café offered its clientele numerous forms of gambling,

including electronic poker machines, a periodic poker game, and most lucratively, Makishti's sports gambling book, where he took dozens of bets on sporting events, particularly soccer. PSR ¶ 34. Makishti's sports gambling operation was so successful that he worked with proprietors of other establishments, like co-defendants Gazmend Lita and Ljuljanovic, to process bets on behalf of their clients. PSR ¶¶ 34, 35. Makishti worked with Iseni, a felon previously convicted twice before in this District, paying Iseni some of his profits in exchange for protection, assistance with maintaining the electronic gambling machines, and other issues related to the illegal businesses. PSR ¶ 32. Makishti also oversaw the laundering of some of Sports Café's criminal proceeds, in order to promote the ongoing operations of the business. PSR ¶ 39.

Makishti was closely tied to Iseni. In one important incident, on December 11 and 12, 2019, Makishti and Iseni spoke, where Makishti told Iseni that some "Italians" had come to speak with Iseni, and Iseni arranged to get their telephone numbers from Makishti. The next day, after Iseni met with these Italians, Iseni told Makishti that the Italians had wanted to know if Iseni knew the person opening an illegal gambling parlor at Avenue O and West 5th in Brooklyn. Iseni told Makishti he needed to know because the Italians had come to Iseni assuming that this new gambling parlor was "with" Iseni. Iseni mentioned that he believed Sulaj knew the man who had opened this new gambling parlor, which was not, in fact, Iseni's business. At the end of the call, Makishti agreed to meet with Iseni and Sulaj; Iseni referred to the fact that he was at Sulaj's café. This meeting was for the express purpose of discussing what to do about the new gambling parlor nearby.

### B. Procedural History

Makishti was charged with three counts of the Indictment unsealed on December 10, 2020 with his arrest and that of his co-defendants. He was released on bail. On September 29, 2022, he pleaded guilty before Your Honor to Counts 2 (conspiracy to operate an illegal gambling parlor) and 3 (conspiracy to transmit gambling information by wire), pursuant to a written plea agreement.

### C. Presentence Investigation Report

The Probation Office has calculated the offense level as 13, consistent with the plea agreement, as follows: the base offense level is 12, pursuant to U.S.S.G. §§ 2X1.1 and 2E3.1(a)(2); four levels are added because the defendant was an organizer or leader, pursuant to U.S.S.G. § 3B1.1(a); and three levels are removed for acceptance of responsibility. PSR ¶¶ 47–58. The defendant has no criminal history.

The appropriate Sentencing Guidelines range is, as calculated by Probation, 12 to 18 months' imprisonment. PSR ¶ 90. Probation recommends a below-Guidelines sentence of 6 months in prison. PSR p. 24.

### D. A Sentence With a Period of Incarceration is Sufficient, but Not Greater Than Necessary, to Comply with the Purposes of 3553(a)

The Sentencing Guidelines provide strong guidance to sentencing courts after *United States v. Booker*, 543 U.S. 220 (2005). Because the Guidelines are "the product of careful study based

on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 552 U.S. 38, 46 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 49. After making the appropriate calculation, the Court must then consider the Section 3553(a) factors, in order to impose a sentence that is sufficient but not greater than necessary.

The Court should impose a sentence of incarceration, albeit below the Guidelines range of 12 to 18 months. Makishti had a well-paying job, which covered his rent and other living expenses in a safe and well-appointed apartment on the Upper East Side. But that job was not enough. Instead, the defendant worked with Iseni, a dangerous felon, to operate a sprawling illegal business to line his own pocket. He earned hundreds of thousands of dollars while doing so. Only a Guidelines sentence, including significant prison time, can properly deter him and others who are similarly situated.

Makishti is differently situated than Ljuljanovic and Sulaj. As the Court may recall, during the charged period Ljuljanovic was employed only at the illegal gambling parlor he ran; Sulaj had an even more fraught employment record. Makishti, however, earned more than $50,000 a year as a superintendent, living rent-free in an apartment building in Manhattan. He chose to join the criminal conspiracies, and had ample opportunities for a good living outside of his criminal conduct. He earned more than did either of those co-defendants: Sulaj earned little money, and the evidence shows that Makishti earned more than Ljuljanovic. Indeed, Makishti's forfeiture amount of $1,069,017 is nearly double Ljuljanovic's ($544,348) and over ten times Sulaj's ($105,000). Makishti was also in frequent contact with Iseni. These factors all weigh in favor of an incarceratory sentence.

Makishti argues for a non-incarceratory sentence. But nothing he provides merits such a downward variance. First, Makishti argues that his conduct here constituted "mere" gambling offenses. Makishti Sentencing Memorandum at 2. The Government agrees that there is no evidence that Makishti or his co-defendants used firearms, or that he directed physical force to try to ensure repayment of a debt. But Makishti wrongly states that that this case has "absolutely no nexus to organized crime" or that there is "categorically no connection" between the defendant and collateral criminal conduct. Makishti's operation of Sports Café was done under the protection and with the assistance of a well-known organized crime figure, Iseni, who was criminally prosecuted for racketeering in the 1990s and, indeed, in the instant case. Similarly, Iseni often met with noted members of organized crime, including an member of a family of La Cosa Nostra. Notably, Iseni earned profits from Makishti's operation of Sports Café, profits that assisted in Iseni's racketeering enterprise, which was replete with threats of violence, money laundering, and fraud.

Second, Makishti points to his familial history and strong work record. Makishti Sentencing Memorandum at 2. But while commendable, those factors are also aggravators under the circumstances and not purely mitigating factors. That is, the defendant had a tremendous amount to lose by committing the instance offenses; and yet, he did so anyway. The Court should appropriately punish that serious breach, done in the face of Makishti's solid family life and good employment.

Finally, Makishti, or more accurately his counsel, asserts that because his offense was victimless, and society has become more accepting of gambling, the Court should impose a non-incarceratory sentence. Makishti Sentencing Memorandum at 2–3. The Government cannot speak for American society. But the forms of gambling he cites in his letter are either lawful and regulated by the applicable state authorities or are plainly *de minimis*, such as his cited example of church bingo. *Id.* at 3. Put simply, Makishti's conduct—under the table, protected by a figure from the criminal underworld, and highly remunerative—is not church bingo. Given his easily distinguishable conduct and guilty plea, Makishti cannot fall back on the prevalence of legal forms of gambling.

Ervin Makishti was an organizer and leader of two lucrative criminal conspiracies, federal crimes that merit a period of incarceration.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: /s/ _____
Samuel Raymond / David Felton
Assistant United States Attorneys
(212) 637-6519/-2299

cc: Leo Duval, Esq. (by ECF)